UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DU NGUYEN,                          )
                                    )
        Plaintiff                   )
                                    )
v.                                  )       No. 2:11-cv-189-NT
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
        Defendant                   )

# REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Social Security Disability ("SSD") appeal raises seven issues, none of which entitle him to relief. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act only through December 31, 2008, Finding 1, Record at 9; that, through this date, he suffered from a herniated lumbar disc at L4-5, an impairment that was severe but did not meet or equal the criteria of any of the impairments listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id*. at 9-12; that, through the date last insured, he had the residual functional capacity ("RFC") to perform light work except that he

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 12, 2012, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

could only occasionally stoop, crouch, crawl, kneel, balance, and climb ramps and stairs, could not climb ladders, ropes, or scaffolds, could sit, stand, and walk for no more than one hour at a time with continued work in another position for five minutes, with normal breaks, and must avoid concentrated exposure to extreme cold and hazards such as moving machinery and unprotected heights, Finding 5, *id.* at 13; that, through the date last insured, he was unable to perform any past relevant work, Finding 6, *id.* at 16; that, given his age (40 on the date last insured, a younger individual), limited education, work experience, and RFC, use of the rules in Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid") as a framework for decision-making supported a finding that there were jobs existing in significant numbers in the national economy that the plaintiff could have performed, Findings 7-10, *id.*; and that, therefore, the plaintiff had not been under a disability, as that term is defined in the Social Security Act, at any time through the date last insured, Finding 11, *id.* at 19. The Decision Review Board failed to complete its review of the decision within 90 days, making the decision the final determination of the commissioner, *id.* at 1-3; 20 C.F.R. § 405.450(b); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge also reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work

other than his past relevant work.  20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Steps 2 and 3 of the sequential evaluation process.  Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims.  *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986).  When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

At Step 3 of the sequential evaluation process, a claimant bears the burden of proving that his or her impairment or combination of impairments meets or equals a listing.  20 C.F.R. § 404.1520(d), *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987).  To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings.  20 C.F.R. § 404.1525(c)(3).  To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 404.1526(a).

## I. Discussion

### A. Step 2

The plaintiff contends that the administrative law judge "omitted several severe impairments at Step 2." Plaintiff's Itemized Statement of Errors ("Itemized Statement") (Docket No. 10) at 11. He mentions specifically migraine headaches and a left leg impairment. *Id.* However, he cites only his own testimony in support of his position. *Id.* at 11-12. It is a basic requirement of proof at Step 2 that medical evidence is necessary to show the existence of an impairment. 20 C.F.R. § 404.1528(a); *Dubois v. Astrue*, No. 2:10-cv-369-JAW, 2011 WL 4594922, at *3 (D. Me. Sept. 30, 2011).

Even if the plaintiff's argument did not suffer from this fatal deficiency, it could not succeed as to the claim based on migraine headaches. On this point, the administrative law judge noted:

> Treatment records also note the claimant's history for migraine headaches, which are well controlled with medication, through at least December 31, 2008, the claimant's date [] last insured. For example, in September 2004, the claimant reported experiencing a recurrence of these headaches (Exhibit 4F, pp. 12-17). Susan Fielding, FNP [,] diagnosed the claimant with chronic allergic sinusitis and prescribed Afrin nasal spray (exhibit 4F, pp. 12-14). In October 2004, the claimant reported improvement in his symptoms (Exhibit 4F, p. 10).
>
> However, in December 2005, the claimant presented to Dr. Phan complaining of another mild recurrence (Exhibit 6F, p. 68). Dr. Phan prescribed Maxalt and the claimant's headaches resolved (Exhibit 6F, pp. 68-55 [sic]). In May 2006, the claimant experienced an acute migraine flare (Exhibit 6F, p. 54). Dr. Phan discontinued Maxalt in favor of a prescription for Verapamil, as a prophylaxis, and Imitrex (nasal spray, and later injections) (Exhibit 6F, p[]. 54). Treatment records thereafter suggest that this prescription regimen helped to resolve the claimant's headaches (Exhibit 6F, pp. 29-54).
>
> However, in September 2007, after about a year without a headache flare, the claimant reported another symptom flare noting that he was not taking his prescribed medications (Exhibit 6F, p. 29). Thereafter, Dr.

> Phan, in addition to his prophylaxis medication, prescribed Zomig nasal spray and Ambien for sleep (Exhibit 6F, pp. 26-27). In October 2007, the claimant reported that his Zomig helped to improve and finally resolve his headaches (Exhibit 6F, pp. 1-25).
>
> The undersigned notes that through December 31, 2008, his date [] last insured, the claimant's recurring migraine headaches resolved with effective medication management (Exhibits 4F and 6F). However, after his date last insured, the claimant's headaches markedly worsened. For example in July 2009, the claimant reported a worsening of the frequency of his migraine headaches from twice a week to having them daily (Exhibit 11F, p. 18). In August 2009, these headaches were so severe that []he presented to the emergency room twice, with symptoms of photophobia and nausea (Exhibits 12E, pp. 2-3 and 12F). Accordingly, the undersigned finds that the claimant's migraine headaches, through December 31, 2008, the claimant's date last insured were a "non-severe" medically determinable impairment.

Record at 10-11.

This is a more-than-sufficient expression of the administrative law judge's supportable conclusion that the plaintiff's migraine headaches were not a severe impairment at the relevant time. It is not clear to what "left leg impairments" the plaintiff's itemized statement refers. The only citation given to the record is to the plaintiff's testimony that he has left leg pain. *Id*. at 32. As previously noted, this is simply insufficient information to raise an issue for judicial review.

### B. Step 3

The plaintiff contends that the administrative law judge should have found that he met Listing 1.04 at the relevant time, and that her failure to consult a medical expert for this purpose requires remand. Itemized Statement at 12-13. The administrative law judge addressed this issue as follows:

> The undersigned has considered whether the claimant's impairment meets or medically equals listing 1.04, *disorders of the spine*. However, the objective medical findings do not support such a conclusion.
>
> The evidence of record contains no objective medical findings establishing nerve root or spinal cord compromise with (A) nerve root

compression, characterized by neuro-anatomic distribution of pain, limitation of motion, or motor loss accompanied by sensory or reflex loss and positive straight leg responses in both the sitting and supine position; (B) spinal arachnoiditis; or (C) lumbar spinal stenosis resulting in pseudoclaudication resulting in an inability to ambulate effectively.

Although diagnostic imaging revealed evidence of a herniated disc at L4-5 compromising the left L5 nerve root, an electrodiagnostic study noted evidence consistent with only mild chronic, rather than acute, left L5-S1 radiculopathy (Exhibit 1F, p.3 and 3F, p.3). Vincent P. Herzog, D.O (Dr. Herzog), on examination, noted normal strength with some slight weakness at the left ankle and normal sensation with some patchy deficit in the left L4-5 dermatome (Exhibit 3F, p. 2). Similarly, Dr. Phan consistently noted decreased sensation in the plantar aspect of the claimant's left foot, but otherwise normal strength and reflexes (Exhibit 6F; *see also* Exhibits 11F and 13F). Moreover, although the medical evidence of record contains some references to positive straight leg raise testing, there is no consistent evidence of a positive straight leg raise in both the seated and supine position (Exhibits 1F; 4F, pp. 38, 55-56; 5F, p. 3; and 6F, pp. 67, 69, 80, 83, 86). Finally, there are no objective findings of spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication and an inability to ambulate effectively.

Record at 12-13 (italicization in original).

"For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). Listing 1.04 is a musculoskeletal system listing related to disorders of the spine. The material portions of the Listing are as follows:

> **1.04** Disorders of the spine (*e.g.*, herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord. With:
> **A.** Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

Appendix 1 to Subpart P, 20 C.F.R. Part 404, § 1.04(A).

The plaintiff points to "a May 2004 MRI [that] showed central and paracentral disc herniation at L4-5 compromising the left nerve root[,]" the fact that "several examining specialists recommended surgery[,]" and the note of Randy Darby, M.D., in April 2004 "that the Plaintiff had probable compression of the exiting L4 root and perhaps descending L5 root.'" Itemized Statement at 12-13. He cites no authority to support his contention that this information "suggests that the requirements of the Listing are met," *id*. at 13, and, tellingly, does not specify the diagnosis, among those listed in section 1.04(A), that is to be found in his medical records. Nor does he point to evidence of any of the "characterized by" criteria in the Listing.

This lack of citation to supporting evidence makes it unnecessary to consider the plaintiff's briefly presented argument that the administrative law judge was required to consult a medical expert in order to make any determination at Step 3 of the sequential evaluation process. However, I do note, as this court has repeatedly said, that consulting a medical expert is a matter within the commissioner's discretion and is not required under applicable regulations, whatever the circumstances. *E.g., Hallock v. Astrue*, No. 2:10-cv-374-DBH, 2011 WL 4458978 at *2 (D. Me. Sept. 23, 2011); *Hicks v. Astrue*, Civil No. 09-393-P-S, 2010 WL 2605671 at *4 (D. Me. June 23, 2010); *Field v. Barnhart*, No. 05-100-P-S, 2006 WL 549305 at *3 (D. Me. Mar. 6, 2006). Neither of the two cases cited by the plaintiff in this regard, *Manso- Pizarro, supra,* and *Bard v. Social Sec. Adm. Comm'r*, 736 F.Supp.2d 270 (D. Me. 2010), can reasonably be read to hold otherwise.[2]

### C. Hearing Transcript

The plaintiff next contends that this claim must be remanded because "[t]he translation provided at the hearing and resulting transcript were inadequate and do not satisfy the Commissioner's burden" because "[t]he Commissioner is required to supply a *complete* record of

---

[2] The plaintiff's citation to case authority without pinpoint citations is of little assistance to the court.

the hearing to the Plaintiff[,]" citing 20 C.F.R. § 404.951. Itemized Statement at 13. Specifically, he complains that his exchanges with an interpreter in Vietnamese are not included in that form in the typed transcript. *Id*. at 14. He points to "multiple instances" when he responded to the translator's translation of a question with a question of his own and the translator "provided her own clarification," exchanges that are not recorded in the transcript. *Id*. He also contends that the use of a telephone by the interpreter "hindered" the transcript, because the interpreter requested that a question be repeated or clarified in "multiple instances," and "it is not clear if this was based on not understanding what was being asked or if it was simply because the interpreter could not hear . . . the question." *Id*.

This list of perceived problems leads the plaintiff to conclude that, because the administrative law judge "cited very little from the testimony in her decision," it is "likely [that] she did not trust the accuracy of the translation and did not think she could rely on what the Plaintiff was reported to have said." *Id*. at 14-15. He speculates that other inadequacies that he perceives in the administrative law judge's opinion were "at least in part[] due to the quality of the translation and transcribed record." *Id*. at 15.

The plaintiff cites no authority for his necessarily-implied arguments that the defendant is required to provide transcripts in both the claimant's language and in English of all translated exchanges at the hearing and that translation must always be performed in person. Such requirements are not imposed on criminal proceedings in federal courts, let alone in administrative hearings. *See generally United States v. Dadanovic*, Criminal No. 09-63-ART, 2010 WL 3620319, at *6 (E.D. Ky. Sept. 13, 2010). If the plaintiff was unable to understand the interpreter, it was incumbent upon him to say so at the time. To wait until the matter reaches the court on appeal and then proffer speculation about what other individuals may or may not have

understood during the hearing is to have waited too long for a proper challenge of the commissioner's decision. The plaintiff, who has had access to the transcript for some time, has not pointed out any translation into English of anything that he said that he in fact believes is incorrect.

The plaintiff is not entitled to remand on this basis.

### D. Pain

The plaintiff argues that he is entitled to remand because the administrative law judge failed properly to assess his pain. Itemized Statement at 15-16. It is difficult to discern from the plaintiff's brief presentation exactly how he contends that the administrative law judge committed a fatal error; he apparently faults the opinion for a failure to discuss with particularity the factors set out by *Avery v. Secretary of Health & Human Servs.*, 797 F.2d 19, 29 (1st Cir. 1986), and for "barely referenc[ing] the Plaintiff's testimony" on this point. *Id*. at 15. He does not describe how the outcome of his claim would necessarily be different, if these alleged errors did not exist.

The lack of such an explanation is fatal to this argument. I agree that there is very little in the administrative law judge's opinion to suggest that she made the specific evaluations required by *Avery*. However, the plaintiff must also demonstrate that such an error was not harmless, *e.g., Curtis v. Astrue*, Civil No. 09-24-P-S, 2009 WL 3632515, at *2 n.3 (D. Me. Oct. 30, 2009); *Trudeau v. Astrue*, Civil No. 07-218-P-H, 2008 WL 4905484, at *6 (D. Me. Nov. 12, 2008), and the plaintiff has not done so here.

### E. Credibility

The plaintiff submits an argument concerning the administrative law judge's evaluation of his credibility that is separate from his argument concerning the administrative law judge's

9

evaluation of his testimony about pain. Itemized Statement at 16-18. Contrary to the plaintiff's initial argument, Social Security Ruling 96-7p, and particularly the language of that Ruling quoted in the plaintiff's itemized statement, does not establish that "the absence of any reference to the Claimant's actual sworn testimony is sufficient" to require remand. *Id*. at 16.

The plaintiff also asserts that the administrative law judge's references to entries in his medical records by three physicians of symptom magnification and positive Waddell's signs are insufficient to support her conclusion that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment[,]" Record at 14, because "Waddell's signs are not necessarily indicative of deception but rather symptom magnification or pain behavior." Itemized Statement at 17. He cites only Wikipedia in support of this assertion. Wikipedia has not been shown to this court to be a reliable medical reference.

The administrative law judge did not suggest that the plaintiff was intentionally attempting to deceive her or his medical care providers. Rather, she cited medical opinions from acceptable medical sources to the effect that the plaintiff tends to magnify his symptoms. The plaintiff speculates that these findings, from three different providers, "could easily be explained as simply an issue with translation." *Id*. At this stage of the proceedings, speculation is not enough to provide a basis for remand. If the plaintiff believed that his medical care providers were not understanding him adequately, he had the opportunity to present this claim and any supporting evidence to the administrative law judge at hearing, where he was represented by an attorney. Record at 25. He did not do so.

On the showing made, the plaintiff is not entitled to remand on this basis.

10

### F. Residual Functional Capacity

The plaintiff contends that the administrative law judge's assessment of his RFC is "incomplete" because it lacks "a proper assessment of pain or credibility" and "does not include consideration of all of the Claimant's medically determinable impairments nor the combined impact of all of the impairments." Itemized Statement at 18. I have already determined that the plaintiff has not shown that alleged improper assessments of pain or credibility were not harmless error, and that the plaintiff did not show that the only specific impairments he identified as those which the administrative law judge should have found to be severe were in fact severe impairments.

The plaintiff correctly asserts that "[e]ven impairments that are non-severe must be considered" when RFC is determined. *Id*. However, he fails to identify any effects of any impairments that would necessarily have changed that RFC, other than the lumbar spine impairment which the administrative law judge did find to be severe and the effects of which were included in the RFC that she assigned to the plaintiff. In the absence of that information, the plaintiff cannot establish entitlement to remand on this basis.

### G. Vocational Testimony

The plaintiff asserts that the testimony of the vocational expert at the hearing "is incapable of providing substantial evidence to support the [administrative law judge's] Step 5 finding." Itemized Statement at 5. This is so, he contends, because the jobs identified by the vocational expert in response to the administrative law judge's hypothetical question as available to the plaintiff all require the ability to read, write, speak, or understand English, which he cannot do. *Id*. In other words, the plaintiff apparently argues that anyone who is illiterate in English is

*per se* disabled for purposes of Social Security benefits.[3]  *But see Warf v. Shalala*, 844 F. Supp. 285, 289 (W.D. Va. 1994) (rejecting argument that would make illiteracy a disability *per se*). The plaintiff's assertion that Social Security Ruling 96-9p can only be interpreted to make all unskilled work unavailable to illiterate applicants for benefits, *id*. at 9, is also incorrect.

Specifically, the plaintiff asserts that two of the three identified jobs are listed by the Dictionary of Occupational Titles as having language development levels of 1, the lowest ranking, and the other is assigned a language development level of 2.  *Id*.  Because language development level is defined as the ability to "[r]ecognize the meaning of 2,500 words," to "[p]rint simple sentences;" and to [s]peak simple sentences," he contends, his English illiteracy makes them unavailable to him.  *Id*. at 6-8.

The plaintiff acknowledges that the administrative law judge asked the vocational expert whether the three jobs "would be possible by somebody who's illiterate in English," and that the vocational expert responded in the affirmative, stating also that '[t]here's a short demonstration that can be learned."  Record at 58.  However, he asserts that this testimony "does not accurately reflect the definition of" the specific vocational preparation ("SVP") level of 2 assigned to these jobs by the Dictionary of Occupational Titles ("DOT"), because "short demonstration" is defined as SVP 1, while SVP 2 is defined as "[a]nything beyond short demonstration up to and including 1 month."  Itemized Statement at 8.   This "conflict" with the Dictionary of Occupational Titles, the plaintiff contends, is unexplained in the record, thereby violating Social Security Ruling 00-4p and requiring remand.  *Id*. at 9.[4]

---

[3] This argument renders void much of Appendix 2 to 20 C.F.R. Part 404, Subpart P, where the Grid states that illiteracy automatically creates disability only for individuals aged 45-49 who are limited to unskilled work.  Grid Rule 201.17.  As of his date last insured, the plaintiff was 40 years old.  Record at 16.
[4] The administrative law judge found that the vocational expert's testimony did not conflict with the Dictionary of Occupational Titles, but did not discuss any possible conflict based on SVP levels.  Record at 17-18.

The following analysis assumes that such a conflict exists, but it is not at all clear that it does. The vocational expert testified, before he used the language quoted by the plaintiff, that "my opinion is that all of these jobs are SVP: 2 to be learned in a relative short period of time through demonstrations." Record at 56. This is significantly different language, and it does not present a conflict with the definition of SVP 2 quoted by the plaintiff.

The plaintiff neglects to mention that, with respect to one of the three jobs identified by the vocational expert, document preparer, his attorney asked the vocational expert specifically about the relationship between the SVP level of 2 and illiteracy in English, and the vocational expert that he knew "from professional association . . . that persons can perform this job at the SVP: 2 level without reading abilities." Record at 58. This testimony, with respect to this specific job, is adequate to explain any "inconsistency" between an SVP level of 2 and illiteracy in English.[5] This court has previously held that the availability of a single job to a claimant may be sufficient to uphold a finding that a claimant is not disabled, *see Conley v. Astrue*, No. 2:10-cv-303-DBH, 2011 WL 4571870, at *3 (D. Me. Sept. 29, 2011), and that is the case here.

The plaintiff contends that this job, as described by the vocational expert, "is not consistent with the job described in the DOT." Itemized Statement at 9-10. The vocational expert testified that the job as it is usually performed requires color or form recognition rather than reading, and is an "inserter or envelope stuffer type job[]." Record at 58. It is true that the DOT description of the job is specific to preparing documents for microfilming, and thus includes more than inserting or envelope stuffing. Dictionary of Occupational Titles (U.S. Dep't

---

[5] At oral argument, counsel for the plaintiff asserted that the vocational expert's testimony was not the "complete" explanation that is required by Social Security Ruling 00-4p because the vocational expert failed to explain why writing information down was no longer part of the job. He cited to no other authority for his position, nor did he cite a specific section of the Ruling. I see nothing in the Ruling that requires more explanation than that given by the vocational expert in this case. Social Security Ruling 00-4p. reprinted in West's Social Security Reporting Service Rulings (Supp. 2011-2012) at 244-45.

of Labor 4th ed. 1991) § 249.587-018. But, it is also true that the scope and duties of many jobs included in the DOT have changed over the 21 years since it was last updated. Microfilming is no longer the primary means of preserving documents. Under these circumstances, the administrative law judge may rely on the testimony of the vocational expert, whose testimony was based, at least in part, on his "professional association." He was called to testify, after all, as an expert and therefore must be allowed to base his testimony on his own expertise. *See generally Omar v. Astrue*, Civil No. 08-270-P-S, 2009 WL 961230, at *3-*4 (D. Me. Apr. 7, 2009), *aff'd* May 1, 2009 (Docket No. 18), and *aff'd on appeal* December 16, 2009 (Docket No. 23).

Finally, the plaintiff contends that the administrative law judge improperly failed to "evaluate the VE opinions for reliability." Itemized Statement at 10-11. He asserts that the reliability of every vocational expert's testimony must be explicitly established under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). *Id.* at 11. Of course, *Daubert* by its terms applies to proceedings conducted under the Federal Rules of Evidence; administrative hearings before the Social Security Administration are not so conducted. *Hardisty v. Astrue*, 592 F.3d 1072, 1080 (9th Cir. 2010); *see also* 42 U.S.C. § 405(b)(1).

In any event, the plaintiff offers only his own counsel's statement to the administrative law judge that the attorney "did not believe the VE's opinions were sufficiently reliable to allow an unfavorable decision at Step 5." Itemized Statement at 10. This is not and cannot be enough to require remand.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 21st day of March, 2012.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge